[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5261-GGGGGG
This action for dissolution has been brought by plaintiff husband against the defendant wife. The parties were married in 1986 in Connecticut. There are two children issue of the marriage, Sarah born on October 28, 1988 and Samuel born on November 3, 1990. The plaintiff is 40 years old and in good health, and the defendant is 37 years of age and is in good health.
The plaintiff had at least a semester at college but then dropped out and attended a technical institute. He describes himself as a computer engineer on his income tax returns. The defendant graduated from Wesleyan University in Middletown, Connecticut with an A.B. and then obtained an M.S.W. from Columbia University in New York City.
At the time of the marriage, the plaintiff was working as a manager of a boat yard and the defendant was working as a medical social worker in a hospital in Norwich, Connecticut. The parties then lived in Mystic, Connecticut where they established a partnership under the title of Malin Warner (Warner was the defendant's maiden name). The partnership was engaged in creating software.
At the time of the marriage the plaintiff had no financial assets but did have the ability to create software while the defendant had assets in the approximate amount of $230,000 in investments and in trust distributions. In addition, both parties came from well-to-do families and from time-to-time both received gifts from their parents or grandparents as the case may be.
The parties have entered into a stipulation with respect to custody and visitation which provides for joint legal custody of the two minor children with primary residence with the defendant. The husband is to have visitation on a reasonable and liberal basis including every other weekend from Friday at 5:00 p.m. to Sunday at 5:00 p.m. and Thursday evenings from 2:30 p.m. until 7:30 p.m. School holidays and vacations shall be shared as equally as possible and the plaintiff shall have four weeks vacation with the children but not more than two weeks consecutively. See Stipulation dated March 5, 1996 attached hereto and made a part hereof.
The first issue is the cause of the breakdown of the CT Page 5261-HHHHHH marriage. The analysis of the history of the marriage indicates that neither party is at fault. They were really incompatible by their natures, the plaintiff, a reticent, self-absorbed person, and the defendant, an outgoing social worker whose expertise lay in talking. Both parties complained that the other did not communicate with him or her. While the plaintiff complained that the defendant never told him about her resources or what she did with them, the fact is that he could have found out her resources by looking at the income taxes which they filed jointly. In addition, the plaintiff was happy to have the defendant handle all the finances of the family so that he did not have to be concerned about paying the bills. Apparently both parties felt the need to try to strengthen their marriage and they went for counseling but it had no apparent effect.
The eventual breakdown occurred in the beginning of 1994 when the defendant entered into a correspondence with a high school boyfriend. It seems to the court that the purpose of this was to try to get the plaintiff to understand her needs and what she thought she was not getting from the marriage — because she told him about the correspondence and discussed it with him and, in effect, told him why she was doing this. His reply was in the nature of a letter, see Exhibit L. In that letter the plaintiff, in effect, acknowledges his inability to reach out to his wife. He also characterizes his wife as the "care giver" in the family. See Exhibit L.
It is apparent from the letter as well as from the actions of the defendant in continuing to contact her high school boyfriend that the breakdown resulted from the inability of both parties to satisfy the other's needs. Consequently, the court finds that neither party is totally at fault and this is a no fault divorce.
There are two financial issues before the court and the first has to do with child support. The plaintiff in his claims for relief has offered to pay $18,000 per year per child until January 6, 1997 at which point he says the child support amount would be set in accordance with the child support guidelines. He also agreed to be financially responsible for the college expenses of both children. He will also be responsible for medical insurance unless the insurance is available through either party's employment.
There is no corresponding request for child support from the defendant nor are there any figures indicating how the guidelines CT Page 5261-IIIIII should be applied from either party. On the face of it, the amount offered by the plaintiff is well below the amount the guidelines would require assuming the percentage of income used to determine the amount appropriate for two children where the weekly income is $1750 would apply to the joint weekly income here of $8423. However, given the failure of either party to present the court with a guideline's fact sheet indicating how the child support figure was arrived at, the court will accept the figure given by the plaintiff since it is above the minimum required and does include the agreement by the plaintiff to pay for both medical and health insurance and college expenses.
The second issue is how the marital estate should be distributed. For this purpose the court must find what constitutes the marital estate and then determine its distribution. The facts which must be examined to arrive at these conclusions follow.
In the first couple of years of the marriage the parties established a partnership called Malin Warner which produced software. The defendant handled the administration and the clerical duties while the plaintiff created the software. About two years after establishing this company, which seemed to be making a profit though not a substantial one, the plaintiff sold a software program which he created to Mr. Ethan Weiner who was then president of Crescent Software and also of another company called QP. In 1988, the plaintiff was offered a job with Crescent Software and began to work for that company some time in the spring of `88. As part of his compensation he was given 30% of the stock of the company.
At that time he asked his wife, the defendant herein, to move, sell their house in Mystic and move to Norwalk so he would not be required to commute which is what he was doing when he first started to work for Crescent. The defendant did protest about the move, partly because she was pregnant with their first child and partly because she did not have much faith in the company that the plaintiff was starting to work for. She had met the president and apparently had taken a dislike to him. However, she relented, sold the house in Mystic, bought the house in Norwalk, furnished it after having it cleaned up, and did most of the job of moving the contents of their house in Mystic to the house in Norwalk. The closing on the house in Norwalk in which she participated occurred in November of 1988. She had given birth to their first child on October 28, 1988. The defendant was CT Page 5261-JJJJJJ also working at the time at Backus Hospital in Norwich and she did so up until the birth of the first child. She also worked for Crescent Software on a part-time basis in 1989. See Exhibit 34.
During all this time, also, the defendant was the sole primary caretaker of the children, the sole manager of the household and of the finances. She used so much of her assets as she found necessary to maintain the family standard of living, particularly during the time when the plaintiff's earnings were modest so that on some occasions the defendant's earnings plus her interest, dividends and trust disbursements exceeded the plaintiff's income.
From 1988 to 1991 the plaintiff's income increased substantially. In 1991 the president of the company offered to sell him his 70% share of the stock outstanding at which time the president would retire from the company under certain conditions, including a $3000 per week payment for ten years. (See exhibit A.)
The plaintiff bought the shares so offered which gave him complete control of the company but also provided for the $3000 per week payment to Mr. Weiner which became a stumbling block in the ensuing two years. In fact, the company had a cash flow problem in 1991 and 1992, and the defendant helped relieve that by loaning the company $120,000 in those two years.
In July of 1993, the plaintiff decided to buy out Mr. Weiner rather than be shackled with this weekly payment for ten years. The buy out required $300,000 which the plaintiff wished to borrow from his wife. However, the plaintiff failed to inform her of any of the details of the business, i.e., what was involved, and partly because of her ignorance of the business and partly because she had little confidence in the company as a result of that ignorance and partly because she did not wish to risk so much of the family's resources, the defendant refused to provide the $300,000. She did suggest that the plaintiff borrow the money from his parents or grandparents. In fact, he did borrow the money from his grandfather and in July of 1993 he bought out Mr. Weiner and became the sole stockholder of Crescent Software and its CEO.
In 1994 the company prospered; the plaintiff's wages soared to over $500,000 and at the same time the problems of the marriage became exacerbated with his concentration on his work CT Page 5261-KKKKKK and with the defendant becoming so unhappy that she startedcorresponding with a high school boyfriend. The defendant told the plaintiff what she was doing and why she was doing it, in effect, telling him what it was she thought was lacking in the marriage. They did try to reconcile but with no success. Consequently, in July, at her request, the plaintiff left the house and set up separate living quarters. Before he left the house, he told the defendant that he was negotiating the sale of Crescent Software for a substantial sum to Progress — again without any real information about what was involved.
In September of 1994, the plaintiff brought this action for dissolution. In December he transferred ten shares of Crescent Software stock to a Charitable Remainder Unitrust. The stock was valued then at $860,000. The price for which the sale was being negotiated was over two million dollars. That sale was consummated in January of 1995. See exhibit C.
At issue in determining the composition of the marital estate is whether or not the Charitable Remainder Unitrust established by the plaintiff in December of 1994, while this action was pending, should be included. This court finds that by clear and convincing evidence this trust was a fraud on the court and on the defendant for the following reasons:
1. the conveyance setting up the trust was made after the dissolution had been brought and while it was still pending;
2. thus, it was an attempt to interfere with the power of the court to distribute the assets of the parties;
3. it was also a fraud on the defendant who is entitled to a share in the distribution of the assets as a part of the court's judgment in the dissolution.
Moreover, the provisions of the trust included the yearly income of seven (7%) percent of the assets for the plaintiff for life and to the children after the plaintiff's death. It then provided that what was left was to go to the Appalachian Mountain Club, of which there was no mention during the trial — or some other charity. Not only was the defendant not mentioned, but the trust also specifically provided that no part of it was to be used for support or alimony. (See exhibit E.) Consequently, the trust is held to be fraudulent both with respect to the court and to the defendant, but instead of ordering it set aside, the court CT Page 5261-LLLLLL will include it in the marital estate.
The court therefore finds the assets of the parties to be as follows:
1. According to the plaintiff's financial affidavit, his assets are $1,990,626 plus $47,422 (his Fidelity account) plus $560,000 (Charitable Remainder Unitrust after taxes) for a total of $2,598,148.
2. The defendant's assets consist of $749,843 according to her financial affidavit.
3. The total assets of the parties equals $3,347,891. This in the court's opinion is the total marital estate.
To determine how to distribute that amount, the court must consider the elements of § 46b-81 of the General Statutes. They include the following:
1. Age: both parties are young, the plaintiff age 40 and the defendant age 36.
2. Length of marriage: eight years.
3. Opportunity for Future Acquisitions: the plaintiff is a creator of computer software and upwardly mobile while the defendant is a medical social worker and community volunteer. Between them, the plaintiff obviously has much more opportunity to acquire future assets while the defendant's opportunity would lie in investments and gifts rather than in any earnings.
4. Occupation and Sources of Income: the plaintiff's sources of income are from his earnings and his ability to create software while the defendant's sources of income are from her work as medical social worker, her investments and her income from a trust the amount of which was not established.
5. Education: the defendant has an A.B. degree from Wesleyan University in Middletown and an M.S.W. from Columbia University in New York while the plaintiff dropped out of college and studied instead at a technical institute.
6. Station in Life: each party has a standard of living which CT Page 5261-MMMMMM each would like to maintain.
7. Cause of Breakdown: the cause of the breakdown has been described and found to be the incompatibility of the parties primarily with both equally to blame.
8. Contribution: the contribution of each to the marriage has been described at some length prior hereto, but it must be emphasized here that while the plaintiff provided the major financial contribution to the marriage through his sale of software which he created, he was enabled to do so by the activities of the defendant in taking care of the house, the children and the finances, in providing financial support from her work and from her investments and at one point enabling him to work at the Crescent Company in Norwalk by selling their house in Mystic and buying the house in Norwalk, arranging for the move, including the clean up of the house in Norwalk and its furnishings, all while pregnant with their first child.
The court finds on the basis of this analysis that the parties contributed equally to the creation of the marital estate.
Having considered all of the elements in § 46b-81, the court makes the following findings and orders:
1. The parties were married on August 23, 1986 in White Plains, New York. At least one of the parties has lived in the state of Connecticut for one year prior to the bringing of this action. The marriage has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. There are two children issue of the marriage, Sarah C. Malin born on October 28, 1988, and Samuel W. Malin born on November 3, 1990.
3. By written stipulation, which is attached hereto and made a part hereof, the parties have agreed on joint legal custody with Mrs. Mallin having physical custody of both children and Mr. Mallin is to have visitation as follows:
a. every other weekend and one night per week;
b. major holidays will be alternated as will vacations with CT Page 5261-NNNNNN the children — with the defendant having a total of a month's vacation but no more than two weeks consecutively.
 All of the items of the stipulation are approved by the court and entered as orders of this court and are part of the judgment herein.
4. The plaintiff is ordered to pay the defendant child support in the amount of $18,000 per year per child until January 6, 1997, at which point the child support amount should be set in accordance with the child support guidelines by motion of either party.
5. The plaintiff will be financially responsible for the college expenses of the parties' children.
6. The plaintiff will be responsible for the medical insurance for the parties' children.
7. Neither party will relocate more than fifty (50) miles from his or her present residence without giving the other party ninety (90) days written notice. The move may then be subject to court review at the motion of either party.
8. The court finds that the marital estate consists of all of the assets set forth in the plaintiff's affidavit of March, 1996, plus his interest in the Fidelity Trust account which appears to be $47,422 plus the Charitable Remainder Trust which after deduction for taxes at forty (40) percent equals $560,000 or a total of $2,598,048. The estate also includes the defendant's assets of $749,848 as set forth in her March, 1996 affidavit. The court further finds that the assets which the defendant brought to the marriage are included in the marital estate because they were used from time to time by the defendant to support the family, and while most of those assets were held separately, they were used by the defendant for the support of the family.
8. The court finds that each of the parties made an equally significant contribution to the marital estate and therefore orders the plaintiff to pay to the defendant the sum of $924,102 representing one half of the total combined assets of the parties as set forth above less the defendant's assets of $749,848. Five Hundred Thousand ($500,000) Dollars of CT Page 5261-OOOOOO this amount shall be paid within three months of the date of this judgment and the remainder within three months thereafter.
9. No periodic alimony is awarded.
10. An order for a conditional wage execution shall issue effective on the date the plaintiff receives employment income.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE
[EDITORS' NOTE: STIPULATION DATED MARCH 5, 1996 IS ELECTRONICALLY NON-TRANSFERRABLE.]